IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONIL JOSE GONZALEZ CENTENO,** | : | No. 3:25cv2518 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **CRAIG LOWE, in his official capacity** | : | |
| **as Warden, Pike County** | : | |
| **Correctional Facility,** *et al.*, | : | |
| Respondents | : | |

............................................................................................................

# ORDER

On January 13, 2026, the court issued an order granting Petitioner Ronil Jose Gonzalez Centeno's petition for writ of habeas corpus under 28 U.S.C. § 2241. (Docs. 9–10). The order directed the respondents to "**immediately** release Gonzalez Centeno from their custody." (Doc. 10 ¶ 2) (emphasis in original).

The court's prior order did not authorize respondents from the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") to impose the condition of an ankle monitor on the petitioner, which essentially keeps him in custody[1]:

---

[1] The court has jurisdiction pursuant to 28 U.S.C. § 1331, the federal question statute, and 28 U.S.C. § 2241(c)(3), which allows a court to grant a writ of habeas corpus to an individual held "in custody in violation of the Constitution or laws or treaties of the United States[.]" The court has no trouble concluding that Gonzalez Centeno remains "in custody" due to his ankle monitor and other reporting requirements related to the Intensive Supervision Appearance Program ("ISAP"). See Maleng v. Cook, 490 U.S. 488, 492 (1989) (acknowledging that the "in



(Doc. 12-1, Pet. Ex. 1).

Consequently, Gonzalez Centeno has filed a motion to enforce the court order, (Doc. 12), arguing that ICE imposed conditions of release not contemplated by the court's determination. Gonzalez Centeno's position is the correct one. DHS/ICE will therefore be directed to remove the electronic monitoring device and lift any other requirement imposed, such as those related to ICE's Intensive Supervision Appearance Program ("ISAP").

---

custody" requirement for purposes of federal habeas is construed "very liberally"); see also Orellana Juarez v. Moniz, 788 F. Supp. 3d 61, 67-68 (D. Mass. 2025) (citing Hensley v. Municipal Court, 411 U.S. 345, 351 (1973); Jones v. Cunningham, 371 U.S. 236, 243 (1963)); Da Silva v. LaForge, No. 25CV17095 (EP), 2026 WL 45165, at *3 (D.N.J. Jan. 7, 2026); N-N-v. McShane, No. CV 25-5494, 2025 WL 3143594, at *4 (E.D. Pa. Nov. 10, 2025).

Furthermore, there is no question that this court has the power to enforce its writs of habeas corpus and may address alleged non-compliance by the government. See Gibbs v. Frank, 500 F.3d 202, 205 (3d Cir. 2007) (citations omitted); Santos v. Lowe, No. 1:18-CV-1553, 2020 WL 4530728, at *2 (M.D. Pa. Aug. 6, 2020) (Rambo, J.) (citations omitted).

Before issuing that order, the court will briefly address the government's response on behalf of DHS. (Doc. 14).  According to that response:

> ICE has the discretion to impose conditions of release, such as ankle monitoring, which it routinely does. Section 236.1(c)(3) allows ICE to impose "conditions of release" a condition of release on noncitizens who are not detained, including "reasonable written restrictions on the alien's conduct or activities." 8 C.F.R. §236.1(c)(3). ICE interprets this regulation to allow for electronic monitoring as a condition of release.

Id.

The government's response is not a model of clarity.  Rather, the government continues to provide unsupported or even Kafkaesque arguments to justify DHS's noncompliance with court orders. See Diahn v. Lowe, No. 1:24CV1936, 2026 WL 84576, at *4 (M.D. Pa. Jan. 12, 2026).

First, ICE apparently interprets 8 C.F.R. § 236.1(c)(3) to apply here.  To the extent that the regulations are even applicable where the court has granted habeas relief, Section 236.1(c)(3) applies to criminal aliens subject to the Transition Period Custody Rules ("TPCR") set forth in Section 303(b)(3) of The Omnibus Consolidated Appropriates Act of 1997, PL 104–208, September 30, 1996, 110 Stat 3009.  A deep dive into those rules is unnecessary. Respondents have not explained why Gonzalez Centeno is subject to the TPCR.  Respondents have not provided information suggesting that Gonzalez Centeno is a criminal.

3

Furthermore, DHS previously contended that 8 U.S.C. § 1225(b)(2)(A) applied to Gonzalez Centeno, not 8 U.S.C. § 1226(a). (Doc. 7 at 2). As discussed at length previously, Section 1225(b)(2)(A) calls for mandatory detention without a bond hearing, *i.e.*, indefinite detention.

Under Section 1226(a), however, an alien may be arrested and detained on a warrant pending a decision on whether the alien is to be removed from the United States. 8 U.S.C. § 1226(a). Pending such a decision, the alien may be released on bond and with conditions. Id. DHS had the ability to arrest Gonzalez Centeno pursuant to Section 1226(a) and then impose conditions, such as the ankle monitor. Id.; see also 8 C.F.R. § 236.1(c)(8). By making an across-the-board policy decision to apply Section 1225(b)(2)(A) to people like Gonzalez Centeno, the petitioner's detention ended up before the undersigned on a petition for writ of habeas corpus.

Rather than continue to circle the drain with respondent's arguments, the court will rule on the motion without further discussion. The January 13, 2026 order granting Gonzalez Centeno's habeas relief was unambiguous. It did not authorize the ankle monitor or any further conditions. DHS acted without authority.

Thus, for the above reasons, it is hereby **ORDERED** that:

1) Gonzalez Centino's motion for emergency relief, (Doc. 12), is **GRANTED** and the court's prior order, (Doc. 10), is reaffirmed;

2) Gonzalez Centino is entitled to immediate unconditional release from custody;

3) Within 24 hours, respondents shall remove the electronic monitoring device/ankle monitor and lift any other requirements which were not contemplated by the prior order of court;

4) Within 24 hours, respondents shall file a declaration or affidavit pursuant to 28 U.S.C. § 1746 confirming compliance with this court order;

5) Respondents are temporarily enjoined from re-arresting Gonzalez Centeno for an additional period of 14 days to ensure that this habeas remedy is effective;

6) Should respondents detain Gonzalez Centeno pursuant to 8 U.S.C. § 1226(a), they shall, within ten (10) days, afford him a bond hearing before an immigration judge, who shall provide an individualized assessment as to whether Gonzalez Centeno poses a flight risk or a danger to the community; and

7) The court retains jurisdiction to enforce this order.

**Date: <u>01/26/2026</u>**                                              **BY THE COURT:**


<u>***s/ Julia K. Munley*         **</u>
**JUDGE JULIA K. MUNLEY**
**United States District Court**